**Lonnie JOHNSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1181S332.**

Supreme Court of Indiana.

Dec. 22, 1982.

Rehearing Denied Feb. 25, 1983.

Ronald K. Smith, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, Lonnie Johnson, was found guilty by a jury in the Delaware Superior Court of murder and was sentenced by the trial judge to serve a term of sixty years and to pay a fine of ten thousand ($10,000) dollars plus court costs. Appellant now directly appeals raising the following six issues:

1. whether the trial court erred by denying Appellant's Motion to Dismiss the Amended Information;

2. whether the trial court erred by excusing certain prospective jurors;

3. whether the trial court improperly limited Appellant's cross-examination of one witness;

4. whether the trial court improperly admitted certain photographic exhibits;

5. whether the trial court erred by giving its Final Instruction No. 20 pertaining to accomplice testimony; and

6. whether certain post-trial conduct by the prosecuting attorney constitutes reversible error.

The evidence tended to show that on May 15, 1980, C. Russell Krull was found dead in his home on Kirby Avenue in Muncie, Indiana. Krull's home had been burglarized. An autopsy revealed that Krull died from a deep scalp laceration secondary to blunt trauma to his head. Witnesses Harold Claiborne, a co-defendant, and Kevin Stoner both testified for the State that they burglarized the Krull home together with Appellant. Stoner further testified that when Krull walked through his front door during the burglary, Appellant hit Krull on his head with a hammer and Appellant and Claiborne wrestled him to the floor and tied him up.

I

Appellant filed with the trial court a Motion to Dismiss the Amended Information contending that the Amended Information was defective because it did not allege the means by which the charged capital murder was committed. The original Information and Allegation of Capital Murder charged that Appellant and accomplice Claiborne committed murder by striking Russell Krull on his head with a blunt instrument while committing a robbery against him. The Information was subsequently amended to inform Appellant that the State would seek the death penalty against him. The Amended Information's second page stated that Appellant and Claiborne caused Krull's death during a robbery by the force used while taking Krull's billfold and money. The Amended Information's first page charged that Appellant and Claiborne caused the death of Krull but omitted the statement employed in the original Information describing the means of causing death as striking Krull on his head with a blunt instrument.

■ The trial court heard arguments on Appellant's Motion to Dismiss and overruled it. Although we do not find the State's position to be commendable, we nonetheless do not find reversible error in this issue. It would have been simple for

the State to again amend its Information to directly indicate that the victim was murdered by being struck on his head with a blunt instrument. The State did not do so, however, and the trial court did not require it to. Notwithstanding, we find that the pleadings as described above sufficiently informed Appellant of the charges against him. Moreover, we find that Appellant was well aware of the charges and was able to defend himself without prejudice. *Carson v. State,* (1979) Ind., 391 N.E.2d 600, 602, *on remand,* Ind., 403 N.E.2d 330. This Court has, in fact, recognized the propriety of filing an information or indictment charging murder where the victim's cause of death is not specifically known. *Roberts v. State,* (1978) 268 Ind. 348, 351, 375 N.E.2d 215, 218 *reh. denied; State v. Carrier,* (1956) 235 Ind. 456, 460, 134 N.E.2d 688, 690. From our reading of the complete Amended Information with Notice of Intention to Seek Death Penalty, we believe Appellant was given an accurate and full notice of the charges he was to defend. We find no reversible error.

## II

■ The trial court excused two prospective jurors challenged for cause by the State because they each indicated that they could not possibly find Appellant guilty of murder if he would face the death sentence by their doing so. Both of these prospective jurors stated that they would find Appellant not-guilty regardless of the evidence. Appellant argues that the exclusion of these two prospective jurors falls within the ambit of *Witherspoon v. Illinois,* (1968) 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, where the United States Supreme Court held that a defendant may not be sentenced to death if the jury was chosen by excluding for cause prospective jurors who possessed an objection to capital punishment. This Court subsequently held, however, that *Witherspoon* does not mean that prospective jurors cannot be excluded if they indicate that their feeling against the death penalty is so strong that they cannot convict under any circumstance. *Frith v. State,* (1975) 263 Ind. 100, 107, 325 N.E.2d

186, 190. This is the case before us. Further, any error according to this issue is harmless since the death penalty was neither recommended by the jury nor was it imposed by the trial judge.

■ The trial judge also excused prospective juror Cynthia Long, an unmarried woman of unknown age who lived alone in a rented apartment. The court indicated that it excused Long because she neither owned real estate nor had anyone dependent upon her for support and therefore was not a householder. Appellant correctly states that this Court has held that a householder need not maintain a dependent. *Stevens v. State,* (1976) 265 Ind. 396, 400, 354 N.E.2d 727, 731, *on rehearing,* 265 Ind. 410, 357 N.E.2d 245. We interpreted the legislative intent to be that a householder is a person who has had the experience of making important and binding practical decisions of everyday life independently of family or others. Since prospective juror Long independently lived and cared for herself, she might have qualified as a householder. We agree with the State, however, that the trial court's application of Ind.Code § 33–4–5–7 (Burns 1975) in this instance was not a violation *per se* of the *Witherspoon* prohibition against any intentional or systemic exclusion of a particular class of persons from jury service. The trial court does have discretionary authority to excuse prospective jurors and a defendant must show that such action resulted in prejudice to his cause. *Holt v. State,* (1977) 266 Ind. 586, 590, 365 N.E.2d 1209, 1211; *Tewell v. State,* (1976) 264 Ind. 88, 95, 339 N.E.2d 792, 797. Appellant has not demonstrated any injury or damage to him from which we might conclude that the trial court's dismissal of prospective juror Long was such an abuse of discretion that it constitutes a reversible error.

## III

■ Appellant claims the trial court improperly curtailed his right to a full and effective cross-examination of State's witness Tommy Lee Isom. Appellant bases his

allegation of error upon several rulings the trial court made regarding objections by the prosecuting attorney to questions asked by defense counsel. It is Appellant's argument that he was prevented from a thorough probing of the witness' evasive and contradictory testimony. The record shows, however, that Appellant was permitted to fully question the witness about which of his statements at trial were true and which were not. Defense counsel fully examined this witness on cross-examination. The rulings of the trial court do not confirm Appellant's claim that he was deprived of the right of cross-examination. The trial court properly sustained the State's objection to a question which had already been asked and answered by the witness. It is proper for the trial court to prohibit repetitious questions and answers in either direct or cross-examination. *Johnson v. State,* (1971) 257 Ind. 389, 394, 275 N.E.2d 14, 17, *reh. denied* (1972).

## IV

■ State's Exhibits Numbered 23, 24, 25 and 26 were photographs of decedent Krull and were admitted into evidence over Appellant's objection that they were cumulative and would serve only to prejudice and inflame the passions of the jurors. Exhibit No. 23 showed the wounds on the decedent's face and Exhibit No. 24 demonstrated a laceration in decedent's scalp. Exhibits Numbered 25 and 26 portrayed the decedent's hands and particularly depicted bruising and punctate wounds usually associated with an act of self-protection according to certain medical evidence. The challenged photographs were, therefore, illustrative of the doctor's testimony and tended to show the nature and extent of the decedent's wounds and to prove the cause of his death. In this regard they were not repetitive or cumulative as they showed different parts of decedent's body and the wounds thereon. Photographic evidence, however gruesome, is admissible if it serves to inform the jury on matters relevant to the case. *Smith v. State,* (1981) Ind. 420 N.E.2d 1225, 1229; *Bond v. State,* (1980) Ind., 403 N.E.2d 812, 817, *reh. denied.*

## V

■ Defendant claims the trial court erred in giving Final Instruction No. 20 which advised the jury that an accomplice witness is one who testified that he was involved with the defendant in the commission of a crime. The Instruction further advised the jury that the testimony of an accomplice is to be reviewed and weighed in the same manner and according to the same rules as the evidence of any other witness. Appellant argues that this Instruction focused undue attention upon the testimony of a particular class of witnesses. This Court has previously approved a virtually identical instruction to which was directed the same objection. *Tippett v. State,* (1980) Ind., 400 N.E.2d 1115, 1118.

## VI

■ Finally, Appellant alleges his conviction should be reversed because of certain actions taken by the prosecutor after Appellant's conviction. When accomplice Claiborne testified in this cause for the State and against Appellant, the State indicated it was dropping its capital murder charge against Claiborne but that Claiborne would be given no other favorable treatment in exchange for his testimony. Claiborne testified before the jury that no plea bargains had been made other than the dropping of the death penalty count. After Appellant was convicted, Claiborne was put to trial but his trial ended in a hung jury. The State subsequently filed against Claiborne a reduced charge of conspiracy to commit burglary to which Claiborne pleaded guilty. Appellant now claims that since the State filed the reduced charge against Claiborne in contravention of the representations made during Appellant's trial, Appellant's conviction must be set aside. We see no merit whatsoever in Appellant's claim. There is no evidence that the prosecutor and Claiborne had a reduction of Claiborne's charge in mind prior to or at the time of Appellant's trial. The prosecutor and the witness deny the existence of any

such agreement and none is apparent anywhere in the record. *Campbell v. State,* (1980) Ind., 409 N.E.2d 568, 570. In fact, the circumstances appear to be that the prosecutor's decision to charge Claiborne with a lesser offense occurred only as a result of the hung jury in Claiborne's first trial. The hung jury obviously changed the prosecutor's circumstance and clearly bore no relationship to Appellant's trial. Furthermore, the State properly points out that this allegation of error was first raised in Appellant's brief to this Court and was never raised before the trial court. *Shepler v. State,* (1980) Ind., 412 N.E.2d 62, 70.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, J., concur.

HUNTER, J., concurs in result with separate opinion.

PRENTICE, J., concurs in result with separate opinion in which HUNTER, J., concurs.

HUNTER, Justice, concurring in result.

It is true that our trial courts have discretionary authority to excuse prospective jurors. As this Court stated in *Holt v. State,* (1977) 266 Ind. 586, 365 N.E.2d 1209, however, "Certainly this discretion must not be exercised illogically or arbitrarily ...." Here, the trial court's dismissal of prospective juror Cynthia Long, a single woman who lived alone in a rented apartment, was purely arbitrary and transcended its discretionary authority.

In *Stevens v. State,* (1976) 265 Ind. 396, 354 N.E.2d 727, this Court unanimously held that a twenty year old juror who resided in a rented apartment with his brother was a "householder" within the meaning of the governing statute, Ind.Code § 33–4–5–7 (Burns 1975). There, we rejected the argument that the juror improperly had been permitted to serve on the jury.

Here, the majority states that prospective juror Long "might have qualified as a householder." *Maj. Op., supra.* Obviously, Long did qualify—as per our holding in *Stevens.* The trial court erred in excusing her because "she neither owned real estate nor had anyone dependent upon her for support and therefore was not a householder." *Maj. Op., supra.* This Court should recognize that fact and should not countenance the dismissal of qualified jurors on grounds that defy Ind.Code § 33–4–5–7, *supra,* and our own case precedent. *Stevens v. State, supra.*

In dismissing Long, the trial court acted arbitrarily and abused its discretion. The abuse of discretion should not be confused with the second prong of the test necessary to gain relief—prejudice to the defendant by virtue of the improper dismissal of a prospective juror. Here, there is no indication that any prejudice inured to defendant; therefore, I concur in the result reached by the majority. Conceding the difficulty of establishing prejudice by virtue of a prospective juror's dismissal, however, it behooves this Court to expressly recognize the trial court's error, lest it appear that absolute and unfettered discretion rests with our trial courts to excuse qualified jurors. That is not the case, as we recognized in *Holt v. State, supra.*

I concur in result.

PRENTICE, Justice, concurring in result.

I concur in the result reached by the majority, but for the reasons stated in my concurring opinion in *Hoskins v. State,* (1982) Ind., 441 N.E.2d 419, 429, I disagree with its treatment of Issue II. Where no death penalty is imposed, there is no *Witherspoon* issue before the Court, and I believe that should be the sole basis for the decision upon that question.

HUNTER, J., concurs.