486 A.2d 1197

**STATE of Maryland**

v.

**Larry Edmund MINSTER.**

**No. 86, Sept. Term, 1984.**

Court of Appeals of Maryland.

Jan. 24, 1985.

Deborah K. Chasanow, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Gertrude C. Bartel, Asst. Atty. Gen., Baltimore, on the brief and Arthur A. Marshall, Jr., State's Atty. and Robert H. Harvey, Jr., Asst. State's Atty., Upper Marlboro, for Prince George's County, on the brief), for appellant.

Gary S. Offutt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

COUCH, Judge.

■ The issue here is whether we should abrogate the common law rule of "a year and a day", which bars a prosecution for murder when the victim dies more than a year and a day after being injured. Inasmuch as we believe this issue is more appropriately addressed by the legislature, we shall not abrogate the common law rule. Accordingly, we affirm the trial court's dismissal of the indictment filed against the appellee, Larry Edmund Minster.

The facts in this case are undisputed. On July 8, 1982, Minster shot the victim, Cheryl Dodgson, in the neck. As a result of the shooting, Ms. Dodgson became a quadriplegic. Minster was charged in Prince George's County Circuit Court with attempted first degree murder, assault with intent to murder, assault and battery and use of a handgun in a crime of violence. He was brought to trial in April of 1983.

Minster was convicted of attempted first degree murder and the use of a handgun in a crime of violence. He was

sentenced to 20 years imprisonment for attempted murder and received a 10 year concurrent sentence for the handgun violation. The Court of Special Appeals affirmed his conviction in an unreported *per curiam* opinion, *Minster v. State,* No. 940 (Md.Ct.Spec.App., Aug. 29, 1983).[1]

On October 3, 1983, Ms. Dodgson died from injuries the State contends resulted directly from Minster's actions on July 8, 1982 one year and eighty-seven days before the victim's death. One month after Ms. Dodgson's death, Minster was indicted for first degree murder. The Circuit Court for Prince George's County dismissed the indictment because the death of Ms. Dodgson occurred more than a year and a day after the shooting. Judge Johnson [the trial judge] noted that *State v. Brown,* 21 Md.App. 91, 318 A.2d 257 (1974), which held that the year and a day rule was valid in Maryland, barred the indictment. The State appealed the dismissal to the Court of Special Appeals. We granted certiorari prior to consideration by the Court of Special Appeals in order to address an issue of public importance.

The State's issue is simply stated: should the prosecution of Minster for the murder of Cheryl Dodgson be barred by the year and a day rule.[2] It argues that the common law rule is now archaic and, in light of medical advances in life-saving techniques, there is no sound reason for retaining the rule today. Minster argues that there are legitimate justifications for the rule's continued application; moreover, because of the number of alternatives available to replace the year and a day rule, a change in the rule should be left to the legislature.

---

1. Minster filed a *pro se* petition for writ of certiorari in this Court (No. 172); his petition was denied on August 20, 1984. 479 A.2d 373.

2. As a sub-issue, the State raises the question of whether the year and a day rule is evidentiary or substantive. This question must be answered only if there is to be a retroactive abrogation of the rule. Inasmuch as we are not abrogating the rule, we need not determine whether the rule is substantive or evidentiary.

In *Brown, supra,* this identical issue came before the Court of Special Appeals. Chief Judge Orth, writing for that court, extensively surveyed the history of this ancient rule, and in order to avoid repetition of what has been well stated before, reference is made to his review. *See Brown, supra,* 21 Md.App. at 92–95, 318 A.2d at 258–60. The Court held that the rule was part of our common law and, although no Maryland case had previously addressed the issue, the rule was "in full force and effect in Maryland." *Brown, supra,* 21 Md.App. at 97, 318 A.2d at 261. In addition, "if change is to be made in the rule it should be by the General Assembly because expression and weighing of divergent views, consideration of potential effect, and suggestion of adequate safeguards, are better suited to the legislative forum." *Id.* [footnote omitted]. We are in accordance with this view.

We agree with Minster that there are a number of sound justifications for retaining this rule. As Chief Judge Orth stated in *Brown,* "[a]bolition of the rule may well result in imbalance between the adequate protection of society and justice for the individual accused, and there would remain a need for some form of limitation on causation." *Brown, supra,* 21 Md.App. at 97, 318 A.2d at 261.

Justice Musmanno, who dissented from the judicial abrogation of the rule in *Commonwealth v. Ladd,* 402 Pa. 164, 166 A.2d 501 (1960), stated this concern more fully:

"Dorothy Pierce, the alleged victim, died of pneumonia. It is possible, of course, that her weakened condition, due to the alleged hurt received thirteen months before, made her more susceptible to the attack of pneumonia. On the other hand, there is the likely possibility that the pneumonia had no possible connection with the injury allegedly inflicted by the defendant.

Suppose that the pneumonia occurred two years after the physical injury, would it still be proper to charge the defendant with murder? If a murder charge can be brought two years after a blow has been struck, will

there ever be a time when the Court may declare that the bridge between the blow and death has now been irreparably broken? May the Commonwealth indict a man for murder when the death occurs ten years after the blow has fallen? Twenty years? Thirty years? One may search the majority opinion through every paragraph, sentence, clause, phrase and comma, and find no answer to this very serious question. The majority is content to open a Pandora's box of interrogation and let it remain unclosed, to the torment and possible persecution of every person who may have at one time or another injured another. I don't doubt that an 'expert' of some kind can be found to testify that a slap in the face was the cause of a death fifteen years later.

If there is one thing which the criminal law must be, if it is to be recognized as just, it must be specific and definitive."

*Id.* at 199–200, 166 A.2d at 519–20. We are reminded of the oft-cited explanation for the rule's existence: "[I]f he die[d] after that time [of a year and a day], it cannot be discerned, as the law presumes, whether he died of the stroke or poison, etc. or of a natural death; *and in the case of life, the rule of law ought to be certain."* 3 Coke, Institutes of the Laws of England at 52 (1797) [emphasis added].

█ In addition, a person charged with attempted first degree murder (as was the case here) can be sentenced to life imprisonment, Md.Code (1957, 1982 Repl.Vol.), Art. 27, §§ 412, 644A. *See Hardy v. State,* 301 Md. 124, 482 A.2d 474 (1984). Moreover, a sentencing judge may always consider the seriousness of the injury to, or the subsequent death of, the victim. Md.Code (1957, 1982 Repl.Vol., 1984 Cum.Supp.), Art. 41, § 124(c). The only additional conceivable punishment a first degree murder conviction entails is the death penalty. We do not believe this distinction is a

sufficient reason to rescind a common law rule which has existed for over seven hundred years.[3]

Assuming, *arguendo,* that we abrogate this rule, with what do we replace it?

In *People v. Stevenson,* 416 Mich. 383, 331 N.W.2d 143 (1982), the court addressed the identical issue we address today. Five alternatives to the rule were offered to that court:

> "(1) The Court could retain the year and a day rule. (2) The Court could modify the rule by extending the span of time, for example, to three years and a day. California Penal Code, § 194. (3) The Court could extend the rule to any length of time it chooses, perhaps two years, five years, or ten years. (4) The Court could change the rule from an irrebuttable presumption to a rebuttable one, but with a higher burden of proof. *Cf., Serafin v. Serafin,* 401 Mich. 629, 258 N.W.2d 461 (1977), requiring clear and convincing evidence. (5) Finally, the Court could simply abolish the rule entirely, leaving the issue of causation to the jury in light of the facts and arguments in each particular case."

*Id.* at 393, n. 4, 331 N.W.2d at 146–47. Similarly, in *State v. Young,* 77 N.J. 245, 390 A.2d 556 (1978), the justices were split between three alternatives: four justices favoring abrogation, two justices favoring retention, and one justice favoring a compromise "three years and a day" rule. In fact, two jurisdictions, California and Washington, have enacted a three year and a day rule.

Thus we find there is a great difference of opinion surrounding the appropriate length of the period after which prosecution is barred and some doubt whether the rule should exist at all. Consequently, we believe it is the legislature which should mandate any change in the rule, if indeed any change is appropriate in Maryland. *See, e.g., Harrison v. Montgomery County Bd. of Educ.,* 295 Md.

---

**3.** The rule has been traced back to the Statutes of Gloucester (1278) in the reign of King Edward I. *See People v. Stevenson,* 416 Mich. 383, 389, 331 N.W.2d 143, 145 (1982).

442, 456 A.2d 894 (1983) and *Felder v. Butler,* 292 Md. 174, 438 A.2d 494 (1981). The legislature may hold hearings on this matter; they can listen to the testimony of medical experts; and they may determine the viability of this rule in modern times.

We also observe that if there is any discernible trend towards abrogation of the year and a day rule, the trend is towards abrogation by act of the legislature, not the judiciary. Of the thirteen jurisdictions which had enacted the year and a day rule by statute in 1941, *see* Note, *Homicide: Why Death in a Year and a Day?,* 19 Chi.-Kent L. Rev. 181. n. 4 (1941), only four jurisdictions retain the rule today. In addition, in two jurisdictions (New York and Oregon) the judiciary has held that the legislature abrogated the rule by failing to include it in the comprehensive revision of the state's Criminal Code. Thus, in eleven jurisdictions the rule has been abrogated by legislative action or omission. In contrast, judicial abrogation has occurred in only five jurisdictions.[4]

We recognize the cogency of the State's argument concerning medical advances in life-saving techniques, and we are aware that other courts have been persuaded by this argument. *See, e.g., Commonwealth v. Lewis,* 381 Mass. 411, 414–15, 409 N.E.2d 771, 773 (1980); *Stevenson, supra,* 416 Mich. at 392, 331 N.W.2d at 146. Yet recent decisions have affirmed the viability of the year and a day rule, *see, e.g., In re J.N.,* 406 A.2d 1275 (D.C.1979) and *State v.*

---

**4.** The statistical breakdown of the above analysis is as follows:

A) *Jurisdictions legislatively retaining the rule*—California, Idaho, Nevada and South Carolina (reckless manslaughter by vehicle).

B) *Jurisdictions legislatively abrogating the rule*—Arizona, Arkansas, Colorado, Delaware, Illinois, Montana, North Dakota, Texas and Utah.

C) *Jurisdictions judicially abrogating the rule*—Massachusetts, Michigan, New Jersey, Ohio and Pennsylvania.

See also note 5 of this opinion for relevant code citations and case names.

*Zerban,* 617 S.W.2d 458 (Mo.Ct.App.1981), and, by our count, the rule remains extant in twenty six states.[5]

In sum, we uphold the application of the year and a day rule in Maryland. Accordingly, we affirm the trial court's dismissal of the indictment.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.

---

**5.** The following state statutes codify the common law: Cal.Penal Code, § 194 (West 1970) (3 years and a day); Idaho Code § 18–4008 (1979); Nev.Rev.Stat. § 200.100 (1979); S.C.Code Ann. § 56–5–2910 (Law Co-op. 1976); Wash.Rev.Code § 9A.32.010 (1983). Sixteen other jurisdictions adopt the rule as part of the common law: *see Smith v. State,* 354 So.2d 1167 (Ala.Crim.App.1977); *State v. Jacobs,* 194 Conn. 119, 479 A.2d 226 (1984); *In re J.N.,* 406 A.2d 1275 (D.C.1979); *Roberson v. State,* 42 Fla. 212, 28 So. 427 (1900); *Manning v. State,* 123 Ga.App. 844, 182 S.E.2d 690 (1971); *People v. Harrison,* 395 Ill. 463, 70 N.E.2d 596 (1946); *State v. Carrier,* 235 Ind. 456, 134 N.E.2d 688 (1956); *Sizemore v. Commonwealth,* 347 S.W.2d 77 (Ky.1961); *Martin v. Copiah County,* 71 Miss. 407, 15 So. 73 (1894); *State v. Zerban,* 617 S.W.2d 458 (Mo.Ct.App.1981); *Debney v. State,* 45 Neb. 856, 64 N.W. 446 (1895); *State v. Haney,* 67 N.C. 467 (1872); *Elliott v. Mills,* 335 P.2d 1104 (Okla.Crim.App.1959); *Cole v. State,* 512 S.W.2d 598 (Tenn. Crim.App.1974); *Aven v. State,* 277 S.W. 1080 (Tex.Crim.App.1925) (one year rule); *Clark v. Commonwealth,* 90 Va. 360, 18 S.E. 440 (1893). Two of these jurisdictions, however, have recently expressed doubt as to the rule's viability. *See Swafford v. State,* 421 N.E.2d 596 (1981) and *State v. Hefler,* 310 N.C. 135, 310 S.E.2d 310 (1984). In addition, in five jurisdictions the rule has been codified by the legislature and subsequently enforced by the courts. *See Roberts v. State,* 17 Ariz. 159, 149 P. 380 (1915); *Fisher v. State,* 109 Ark. 456, 160 S.W. 210 (1913); *State v. Moore,* 196 La. 617, 199 So. 661 (1940); *State v. Warner,* 237 A.2d 150 (Me.1967); *State v. Keerl,* 29 Mont. 508, 75 P. 362 (1904). Current legislative research indicates that the statutes in these five jurisdictions have been repealed and therefore the status of the rule in those five states is questionable.