Raymond **MARKLEY**, Appellant–
Defendant Below,

v.

**STATE** of Indiana, Appellee–
Plaintiff Below.

No. 27A04–9202–CR–62 [1].

Court of Appeals of Indiana,
Third District.

Nov. 25, 1992.

Transfer Denied Jan. 20, 1993.

1. This case was diverted to this office by order of the Chief Judge.

Joe Keith Lewis, Fishburne, Lewis & Elliott, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Raymond Markley appeals his convictions on four counts of dealing Lysergic Acid Diethylamide ("LSD"),[2] a Class B felo-

2. IND.CODE 35–48–4–2 (Supp.1992).

ny, and four counts of possession of LSD,[3] a class D felony. Markley presents two issues for our review.

   I.  Whether the State established a proper foundation for the admission of chemical tests and the expert opinions based thereon.

   II.  Whether the Defendant was denied the presumption of innocence by the instructions given to the jury.

We affirm.

On four occasions between October 24, 1991, and October 31, 1991, Markley sold a total of sixteen "hits" to two police informants. Troy Ballard of the Indiana State Police Laboratory determined the "hits" contained LSD.

## I.

### Admission of Chemical Tests

■ To qualify as an expert, two requirements must be met. First, the subject matter of the witness' testimony must be related to some scientific field beyond the knowledge of the average lay person. Second, the witness must have the knowledge or experience in that field to make it appear that the witness' opinion will aid the jury. *Corbin v. State* (1990), Ind., 563 N.E.2d 86. Whether a witness is qualified as an expert is within the trial court's discretion, and we review only for an abuse of that discretion. *Mihay v. State* (1987), Ind., 515 N.E.2d 498, *reh'g. denied.*

■ First, the subject-matter of Ballard's opinion was related to chemical assay techniques used to determine the presence of LSD. Because the chemical assay techniques were beyond the knowledge of the average lay person, expert testimony was properly considered. Second, Ballard had sufficient knowledge and experience in the field,[4] and his opinion aided the jury. The trial court did not abuse its discretion by allowing Ballard to give his expert opinion concerning his assay of the evidence.

Markley asserts that the trial court abused its discretion by admitting Ballard's opinion and test results because of the limited testimony on the accuracy of the instruments, chemicals, and the procedures used to verify the accuracy of the results.[5] Markley argues the foundation to admit Ballard's opinion and test results requires the accuracy of the instruments, chemicals, and results be proven. He argues by analogy to breath test equipment, speed detection devices, and scales.

In *Hopkins v. State* (1991), Ind., 579 N.E.2d 1297, the court noted that the more technical the test involved, the less particularized as a matter of law are the foundational requirements. That court compared the strict foundational requirements for the admission of a police officer's breath test result to the less specific foundation for the admission of laboratory blood alcohol results. The more technical the tests, the greater the level of expertise involved, and the more the procedural particulars are left to expert discretion.[6] *Hopkins, supra,* at 1303.

---

3. IC 35–48–4–7 (Supp.1992).

4. At trial, Ballard testified extensively concerning the tests he conducted on the "hits" and the principles underlying the test procedures. Additionally, Ballard explained that he received his undergraduate degree in Chemistry and has worked for the Indiana State Police Laboratory since January 1979. His duties included the testing of evidence suspected of containing controlled substances. He has attended various schools and seminars for forensic chemists and in the use of scientific laboratory instruments.

5. Markley neither contests the existence of a theory generally accepted in the scientific community that forensic tests can produce reliable results as to the presence of a chemical compound in a given sample, nor that Thin Layer Chromatography or Gas Chromatograph Mass Spectrometry ("GCMS") are capable of reliably detecting the presence of a chemical compound in a given sample which is generally accepted in the relevant scientific community. *See Hopkins v. State* (1991), Ind., 579 N.E.2d 1297, 1302.

6. *See also,* 260 IND.ADMIN.CODE 1–4 and 1–5 (1982) (repealed by 7 IND.REG. 340 (1983)). These sections dealt with inspection and certification of chemicals and chemical devices used to analyze blood, urine or body materials, other than breath, for alcohol, and they mandated the strict foundational requirements requested by Markley. However, now, these foundational considerations are left to the technical expert's discretion.

Markley's arguments are analogies to the higher foundational requirements for non-scientists, such as police officers. However, police officers are required, in lieu of scientific training, to demonstrate they are correctly using a properly functioning breathalyzer or speed detection device, provided by scientists. Because Ballard has received scientific training and has substantial experience, he is a technical expert. He, therefore, is not subject to the extensive foundational requirements as that of a police officer.

The supposition that a scientific test is subject to error, if not properly conducted, is not a reason for rejecting the evidence adduced by such a test. The persuasiveness of such evidence is in a large measure dependant upon the expertise of the witness who conducted it. In the final analysis, the witness' persuasiveness is an issue of credibility to be determined by the trier of fact after an opportunity for cross-examination. *See Hayes v. State* (1987), Ind.App., 514 N.E.2d 332, 338, *reh'g. denied, trans. denied.*

Based on *Hayes, supra,* Markley's questions about the instruments, calibration, and the known standard essentially challenge whether Ballard properly conducted the tests. These issues go to the weight and credibility of the testimony, rather than to its admissibility. Markley had the opportunity to scrutinize through cross-examination Ballard's opinion and the instruments used to conduct the tests.

The reasonable inference from Ballard's testimony is that he is an experienced chemist. He was satisfied his instruments were properly functioning and calibrated. He obtained a known standard which he believed appropriate for testing for LSD. *See, Orr v. State* (1984), Ind. App., 472 N.E.2d 627, 633, *trans. denied,* and *Schlabach v. State* (1984), Ind.App., 459 N.E.2d 740, 743, *reh'g. denied.* Whether Ballard properly conducted the tests was a credibility issue for the trier of fact. The trial court did not err by allowing Ballard to testify about the results of his chemical assay.

## II.

### Jury Instructions

Markley argues the combination of the following two jury instructions denied him the presumption of innocence:

> This rule of law which presumes the defendant to be innocent and which requires the State to prove the defendant's guilt beyond a reasonable doubt is a rule not intended to shield the guilty from being justly punished for such guilt, but it is a humane rule intended to secure the protection of the innocent and to guard against the conviction of those who are innocent and who may be unjustly charged with a crime. It is a practical rule for the guidance of the jury in [the] administration of justice, and should be so considered by you in your deliberations in this case.

Supplemental Record, p. 3.

> The court further instructs you that you should not indulge in purely speculative doubts, and the bare possibility that the defendant may be innocent does not raise a reasonable doubt. The question of defendant's guilt must be determined by each of you in view of your obligation to act honestly and fairly in weighing the evidence and reaching a decision which your oath imposes.

Record, p. 126.

The second instruction (unnumbered from Record, p. 126) has been approved by our supreme court in *Corbin, supra,* and *Light v. State* (1989), Ind., 547 N.E.2d 1073, *trans. denied. Spradlin v. State* (1991), Ind., 569 N.E.2d 948, 951, recommended that an instruction similar to the first instruction (unnumbered from Supplemental Record, p. 3) not be used in future cases. While our supreme court has recommended against the use of this instruction, its use does not amount to reversible error.

The jury instructions are to be considered as a whole and with reference to each other. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463, 467. An error in an instruction will not warrant reversal unless

it is of such a nature the entire charge of which it is a part misleads the jury on the law of the case. *Jackson v. State* (1991), Ind., 575 N.E.2d 617, 621.

The two instructions complained of were given in combination with the following instructions: The fact "the defendant [was] arrested and brought to trial is not to be considered by you as any evidence of guilt." Supplemental Record, p. 1. "[I]t is the law that every person charged with the commission of a crime is presumed to be innocent until his guilt is established beyond a reasonable doubt...." Supplemental Record, p. 4. The jury received an instruction about "reasonable doubt." Moreover, the jury was told,

> ... The State [has] the burden of proving beyond a reasonable doubt every material averment in the information before the defendant can be found guilty, and failure of the State to prove any one of such material facts will entitle the defendant to an acquittal. *The law in a criminal case presumes the defendant to be innocent, and this presumption continues in favor of the defendant, step by step, throughout the trial, until the presumption is removed by evidence introduced by the State which convinces you, beyond a reasonable doubt, of the guilt of the defendant.*

Record, p. 90 (emphasis added).

When the instructions are construed together, the jury was not misled as to the law of the case. Markley was not denied his presumption of innocence or placed in peril by the instructions.

We affirm.

CHEZEM and MILLER, JJ., concur.